IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JUSTIN JAICO GRIHAM AND
EMMANUEL L. MENIRU,

    Plaintiffs,

v.                                                                                          Case No. 2:21-cv-02506-MSN
                                                                      JURY DEMAND

CITY OF MEMPHIS, TENNESSEE,
TAIYUAN BROOKS, A. MALONE and
JOHN AND JANE DOES 1-10 MEMPHIS
POLICE DEPARTMENT OFFICERS
in their Official and Individual Capacities,

    Defendants.

---

### ORDER GRANTING DEFENDANT CITY OF MEMPHIS' MOTION TO DISMISS

---

Before the Court is Defendant City of Memphis' ("City") Motion to Dismiss, filed August 26, 2021. (ECF No. 13) ("Motion".) Plaintiffs timely filed their Response on September 23, 2021. (ECF No. 18.) The City filed its Reply on September 27, 2021. (ECF No. 19.) For reasons below, the City's Motion is **GRANTED**.

### BACKGROUND

The Court must determine whether the Amended Complaint states a plausible claim against the City, a municipality, arising from conduct by several law enforcement officers during their apprehension and arrest of Plaintiffs. It does not.

Plaintiffs sued the City and officers individually for compensatory and punitive damages related to injuries incurred from conduct that allegedly violated their constitutional rights under 42

U.S.C. § 1983. (ECF No. 8 at PageID 39.) Specifically, on April 4, 2021, Plaintiffs, accompanied by others, rode all-terrain vehicles ("ATVs") in the Lamar Avenue and Knight Arnold Road area in Memphis. (*Id*. at PageID 5.) When they attempted to depart this area, Defendant officers pursued them in police cruisers and, without warning, struck plaintiffs' ATVs with their vehicles forcing them from the road.[1] (*Id*.) Thereafter, Defendant officers forcefully restrained Plaintiffs, and handcuffed them, which resulted in physical injuries to Plaintiffs. (*Id*.) Plaintiff Griham received treatment for his injuries at Regional One Medical Center and Plaintiff Meniru received treatment at Saint Francis Hospital Park. (*Id*.)

On August 5, 2021, Plaintiffs filed their Complaint against Defendant officers in their official and individual capacities (Claim I) as well as the City of Memphis (Claim II).[2] (*Id*. at 7, 19.) Plaintiffs filed their Amended Complaint one day later. (ECF No. 8.) The City filed the instant Motion under Federal Rule of Civil Procedure 12(b)(6) on April 28, 2021. (ECF Nos. 15, 15-1.)

## LEGAL STANDARD

a. <u>Motion to Dismiss</u>

Deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). The Court adopts this framework to determine whether the complaint alleges

---

[1] The Amended Complaint further alleges that a police cruiser "almost landed on top of" Plaintiff Meniru when it forced him from the road. (*Id*.)

[2] This Order addresses only those claims asserted in Claim II, against the municipality. Claims against the Defendant officers will be addressed in a separate Order that assesses those Defendants' Motion to Dismiss. (ECF No. 14.)

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint will be found plausible on its face only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While a complaint need not include detailed factual allegations, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Stated differently, "[t]he factual allegations need not be overly detailed, but nor can they merely recite the elements of a cause of action and make a 'the-defendant-did-it' allegation." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 759 (6th Cir. 2020); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) ("Factual allegations must be enough to raise a right to relief above [a] speculative level.") If a court, relying on its judicial experience and common sense, determines that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

    b. Municipal Liability

"To prevail on a cause of action under [42 U.S.C.] § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)); *see Gomez v. City of Memphis*, No. 2:19-cv-02412-JPM-tmp, 2021 WL 1647923, *54 (W.D. Tenn. 2021). "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following:

3

(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *see Thomas*, 398 F.3d at 429; *Wallace v. Coffee Cnty.*, 852 F. App'x 871, 876 (6th Cir. 2021) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Whereas the *first* theory simply requires a plaintiff to "identify" a formal policy, the latter three require more. *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir. 2008). After all, "[l]ocating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Turning to the *second* theory, "a 'custom' can give rise to municipal liability when the 'practice is so widespread as to have the force of law.'" *North v. Cuyahoga Cnty*, 754 F. App'x 380, 386 (6th Cir. 2018) (quoting *Brown*, 520 U.S. at 404–05).[3]

The *third* theory requires a plaintiff to show: "(1) the training program is inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413–14 (6th Cir. 2015) (quoting *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)). To show "deliberate indifference"

---

[3] Policy and custom are distinct. *Compare Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) ("Municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality." (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986))), *with Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) ("A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice.").

under this theory, a plaintiff must "show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Hardin*, 398 F.3d 837, 849 (6th Cir. 2005); *see Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (citing *City of Canton v. Harris*, 489 U.S. 378, 103 (1989)); *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (quoting *Brown*, 520 U.S. at 404–05) ("'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.")  "The easiest way for an individual to meet this burden is to point to past incidents of similar police conduct that authorities ignored." *Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010).  "[A] single violation, 'accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.'" *Bonner-Turner*, 627 F. App'x at 414 (quoting *Brown*, 520 U.S. at 409).  "However, mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011); *see Miller*, 408 F.3d at 816.

*Fourth*, to demonstrate that a municipality follows a "custom of tolerance" or inaction toward constitutional harm, the Sixth Circuit "require[s] plaintiffs to show (1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015); *see Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007).  The Sixth Circuit affirmed lower courts' decisions to grant motions to dismiss in similar cases where the plaintiff "has only his

5

experience on which to rely" and does not allege "similar incidents" involving others. *Shorts v. Bartholomew*, 255 F. App'x 46, 58 (6th Cir. 2007); *see, e.g.*, *Garretson v. City of Madison Heights*, 407 F.3d 789, 795–96 (6th Cir. 2005) ("But we have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff.") A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

## **DISCUSSION**

### a. Parties' Positions

The Amended Complaint invokes the second, third, and fourth theories discussed above to justify Plaintiffs' position under *Monell* and survive the City's Motion.[4] *First*, Plaintiffs argue that the City has a "practice of overlooking constitutional torts" that "may be so common and well-settled that it fairly represents official policy." (ECF No. 8 at PageID 57.) *Second*, they cite *Pineda v. City of Houston*, 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000) to assert that the City "failed to train a single officer," despite its policymakers knowing about a "pattern of unconstitutional misconduct" and "clear warning that a particular Officer posed a danger to citizens," and exhibited "deliberate indifference" toward the "rights, safety, or welfare of others, including Plaintiff[s]." (ECF No. 8 PageID 59.) *Finally*, they allege "Defendant City knew that Defendant Officers were likely to engage in other acts of wrongful conduct, yet Defendant City continuously failed to discipline, supervise, or train Defendant Officers." (*Id.*)

The City argues that Plaintiffs have failed to raise a colorable § 1983 claim under *Monell* for four reasons. *First*, citing *Iqbal*, it argues that Plaintiffs' "failure to train" and "custom of

---

[4] Plaintiffs concede "the County's and the City's practice of overlooking constitutional torts was not authorized by an officially adopted policy . . ." and do not identify any such formal policy. (ECF No. 8 at PageID 57.)

6

tolerance" claims are "all purely conclusory in nature and without any basis in fact." 556 U.S. at 678 (ECF No. 13 at PageID 78.) Specifically, the City explains that the Amended Complaint lacks any facts to plausibly suggest that (a) the City knew about prior unconstitutional conduct, (b) the City ignored prior misconduct by any officer, or (c) any similar incidents ever occurred beyond Plaintiffs' alleged injuries. (*Id*. at PageID 80–81.) *Second*, the City maintains that Plaintiffs' "excessive force" claims are likewise conclusory because they do not show that *the City's* policy or custom constituted the "moving force of the constitutional violation" and therefore fail to implicate the City. *Monell*, 436 U.S. at 694 (ECF No. 13 at PageID 82.) *Third*, the City contends that Plaintiffs' First, Fifth, and Eighth Amendment claims must fail because Plaintiffs have failed to identify a city policy, connect it to the city, and show the policy's execution caused the injury sustained. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (ECF No. 13 at PageID 82.) *Finally*, the City argues that any state law claims against it fail under enumerated exceptions in Tennessee's Governmental Tort Liability Act ("GTLA"). (*Id*. at PageID 128–30.)

Plaintiffs respond that the City misconstrues the pleading standard announced in *Twombly* and *Iqbal* when it argues that Plaintiffs offered insufficient facts to show the City maintained a policy or custom of overlooking constitutional violations by its officers.[5] (ECF No. 18 at PageID 118–20.) Specifically, Plaintiffs believe "it is egregious to ask for prior instances of failure to train at this early stage of suit" and that the Amended Complaint contains sufficient factual allegations

---

[5] The Court will not consider any new factual allegations included in the Response not previously raised in the Complaint. *See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541–42 (6th Cir. 2012) (citing Moore's Federal Practice § 12.34 ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")); *see, e.g.*, *Shinault v. City of Memphis Fire Dep't*, No. 14-2865-SHL-dkv, 2015 WL 4756499, *2 n. 2 ("The court is limited to the facts and legal claims as raised in the pleadings; as a result, the additional facts asserted in Shinault's response to the motion to dismiss are not part of the lawsuit and the court will not consider them.")

to withstand the City's Motion. (*Id*. at PageID 127.) Plaintiffs also argue that their GTLA claim survives under the "intentional tort exception", which "preserves immunity for suits claiming negligent injuries arising from civil rights violations." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) (*See* ECF No. 18 at PageID 128.) Finally, Plaintiffs submit that their First Amendment retaliation claim survives because the City's cited authority, *Garner*, involved a *post*-discovery Rule 56 motion whereas this matter involves a *pre*-discovery Rule 12(b)(6) motion.

B. *Monell* Liability

*First*, the Court must determine whether Plaintiffs have shown the City has a "practice of overlooking constitutional torts" that "may be so common and well-settled that it fairly represents official policy." (ECF No. 8 at PageID 57.) To prevail on this theory under *Monell*, Plaintiffs must identify "formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). Plaintiffs allege that the City sanctioned eleven (11) customs that trigger liability under *Monell*:

> (1) Using unreasonable and excessive force to carry out detentions and/or arrests.
> (2) Arbitrarily using arrests when they are not necessary or permitted by law.
> (3) Ignoring the serious need for training and supervision of its Officers regarding its policies and procedures when conducting detentions and/or arrests.
> (4) Failing to adequately supervise and/or observe its Officers.
> (5) Failing to adequately train Officers regarding the availability of alternative means other than the use of arrests, force, or excessive force without probable cause.
> (6) Failing to discharge Officers who have shown a pattern or practice of falsely arresting citizens.
> (7) Failing to exclude Officers who have shown a pattern or practice of misbehavior and using excessive force from taking part in the execution of warrants.
> (8) Failing to adequately screen Officers who have shown a pattern or practice of using excessive force before hiring said officer.
> (9) Failing to inform future employer of Officers who have shown a pattern or practice of using excessive force when future employer has inquired; and
> (10) Failing to discharge Officers who have shown a pattern or practice of using excessive force; and

>(11) Adopting a practice whereby Officers who are unfit for peace Officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

(ECF No. 8 at PageID 58.) For analytical concision, the Court groups these factual allegations into either of two categories: affirmative and negative conduct. It will treat allegations (1), (2), and (11) as affirmative and all others as negative conduct.[6]

As to *affirmative conduct*, analyzed under the second *Monell* theory, Plaintiffs' allegations in (1), (2), and (11) lack sufficient facts to show the City had a "fixed plan of action" that manifested as a practice with "the force of law."[7] *Pembauer*, 475 U.S. at 481; *Adickes*, 398 U.S. at 144. Courts apply this standard, with like rigor, to Rule 12(b)(6) and Rule 56 disputes.[8] *See Birgs*, 686 F. Supp. 2d at 780 (dismissing complaint under Rule 12(b)(6) because it "contain[ed] no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department."); *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (affirming summary judgment because complaint "presented no evidence that the county maintained policies or customs that would have caused her injury.") Consequently, Plaintiffs

---

[6] "Affirmative conduct" here simply means the City allegedly acted, whereas "negative conduct" means the City allegedly abstained from action it supposedly should have taken. *See generally Holsapple v. Cunningham*, 817 F. App'x 95, 105 (6th Cir. 2020) (distinguishing "an omission from affirmative act").

[7] By no means does this standard ask too much of Plaintiffs; it merely requires *some* factual basis for the Court to conclude that a custom exists without *assuming* the worst about the City. After all, in *Wright v. City of Euclid* the plaintiff pointed to police training materials that "depict[ed] police officers beating African-American suspects" and a slideshow featuring a "cartoon in which a stick figure police officer in riot gear is shown beating a prone and unarmed civilian with a club." 962 F.3d 852, 880. These facts led the Sixth Circuit to conclude that "Wright has produced enough evidence such that a reasonable jury could find that the City's custom surrounding use of force is so settled so as to have the force of law and that it was the moving force behind violations of Wright's constitutional rights." *Id*. at 881. Therefore, the Court finds the standard not only fair, but more than attainable with proper factual allegations.

[8] Where a plaintiff pleads *specific* allegations that raise factual questions for the jury, district courts deny motions to dismiss. *See, e.g.*, *Stewart v. City of Memphis*, (denying Rule 12(b)(6) motion because "Plaintiffs allege that Defendant City has a policy and/or custom of its officers failing to call for back-up and receiving coded radio transmissions in the presence of citizens not yet under arrest.")

*exclusively* rely on their *personal* experiences with Memphis police to warrant a finding that the City exhibits a deliberate custom toward excessive force, arbitrary arrests, and practice of retention for officers who abuse their authority.[9] (ECF No. 8 at PageID 58–59.)

This approach does not satisfy *Monell*. The Court finds that Plaintiffs have not articulated any facts to show that the City's alleged "practice of overlooking constitutional torts," (*Id.*), "is so widespread as to have the force of law." *Brown*, 520 U.S at 404; *see North*, 754 F. App'x at 386; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (". . . custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements."); *see, e.g.*, *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (county jail practice of detaining persons from Friday to Sunday when unable to post bail after warrantless arrest deemed a "custom" under *Monell*). Here, the Amended Complaint does not contain any facts that suggest that the officers' conduct in this case reflected a "settled practice" condoned by the City and not an isolated incident. *See Adickes*, 398 U.S. at 167–68. Therefore, the second *Monell* theory is not satisfied.

Turning to *negative conduct*, the Court assesses Plaintiffs' "failure to train" allegations under the third *Monell* theory.[10] Applying *Plinton*, Plaintiffs must show that the City's "training program is inadequate to the task the officer must perform," that any such inadequacy results from

---

[9] Plaintiffs double down on this approach in their Response, arguing that the timeframe between the first and second police cruiser-ATV collisions indicates a pattern. (ECF No. 18 at PageID 123.)

[10] Plaintiffs cite *McNabb v. Memphis*, No. 03-cv-02334 M1/P, 2004 WL 2375631, *4 (W.D. Tenn. 2004) as authority that they have brought a plausible claim against the City. However, the portion of the *McNabb* opinion they cite addresses claims against individual officers who sought qualified immunity—a different inquiry altogether from the one before this Court. They also cite *Latits v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017), which is inapposite for the same reason: it deals with immunity for officers, not municipalities (qualified versus sovereign immunity).

the City's "deliberate indifference", and that it is "'closely related to' or 'actually caused' the plaintiff's injury." *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413–14 (6th Cir. 2015) (quoting *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)).

Here, like in *Plinton*, Plaintiffs have failed to offer probative evidence for deliberate indifference because the Amended Complaint does not "show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher*, 398 F.3d at 849. Deliberate indifference is a "stringent standard of fault" that "even heightened negligence cannot suffice." *Brown*, 520 U.S. at 410. Although Plaintiffs submit that "Defendant City knew that Defendant Officers were likely to engage in other acts of wrongful conduct" and refused to discipline them, they do not allege any prior instances of such "other conduct" as required to plausibly state a claim under *Monell* and *Plinton*. (ECF No. 8 at PageID 59.) Moreover, their reliance on *Estate of Thiel v. Sterling Heights* is misplaced for two reasons.[11] First, the decedent in *Thiel* allegedly ran at police with a knife before they shot and killed him; the plaintiff then *specifically* pled that the defendant officers had been insufficiently trained *about handling violent criminals*, a particular type of training. No. 09-cv-12399, 2010 WL 3170510, *11 (E.D. Mich. 2010). Plaintiffs do not make such a specific allegation here, but instead allege that their injuries resulted from the City's deliberate indifference *in general*. (ECF No. 8 at PageID 59.) Unlike in *Thiel*, where the plaintiff alleged better training for handling violent offenders should have been

---

[11] The Court notes two points for clarification. First, Plaintiffs refer to the instant Motion in their Response as a "motion for judgment on the pleadings", which is a Rule 12(c) motion, when in fact a Defendants filed a motion to dismiss under Rule 12(b)(6). (ECF No. 18 at PageID 126–27.) Second, Plaintiffs seem to conflate qualified immunity with sovereign immunity; the former may or may not apply to the defendant officers, whereas the latter may or may not apply to the City. (*See id.*)

conducted, Plaintiffs allege "the need for additional or different training was necessary" but do not specify what training that should be. (ECF No. 8 at PageID 59.) Second, the plaintiff in *Thiel*, as Plaintiffs acknowledge in their Response, (ECF No. 18 at PageID 124.), identified "official policies" that the defendant officers allegedly breached; Plaintiffs identified no such policies here. Therefore, Plaintiffs' generalized language "is insufficient to support an inadequate training claim" under the third *Monell* theory because it does not present "more than a sheer possibility," *Iqbal*, 556 U.S. at 678, that "municipal action was the moving force behind the injury of which the plaintiff complains." *Munson v. Bryan*, No. 3:15-cv-0078, 2015 WL 4112429, *17 (M.D. Tenn. 2015); *Brown*, 520 U.S. at 405.

All remaining *negative conduct* will be analyzed under the fourth *Monell* theory because it fits neatly under a "custom of inaction toward constitutional violations" umbrella. *See Nouri*, 615 F. App'x at 296. The Sixth Circuit *requires* Plaintiffs to satisfy a four-prong test to sue the City under this theory: "(1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Id*.

Here, as in *Nouri*, Plaintiffs' Amended Complaint is "fatally deficient" as to the first prong because it fails to show a "clear and persistent pattern" of misconduct outside the incident underlying this cause of action. *Id.* The Amended Complaint contains no allegations of similar incidents that would suggest a *clear* pattern of police misconduct tolerated by the City. Accordingly, the Amended Complaint also fails under the second, third, and fourth prongs because the City cannot have actual or constructive notice, tacitly approve, or be linked to a pattern of misconduct, without a factual basis that said pattern exists. Moreover, "[t]o infer the existence of a city policy from the isolated misconduct of low-level officers, and then hold the city liable based

12

on that policy, would amount to the very strict *respondeat superior* liability rejected by the Supreme Court in *Monell* and its progeny." *Epperson*, 140 F. Supp. 3d at 686; *see Munson*, 2015 WL 4112429, at *15. Therefore, the Court finds that Plaintiffs "[have] only [their] own experience on which to rely, and that is not enough to state a claim against the [City]" under the fourth *Monell* theory. *Nouri*, 615 F. App'x at 296; *see Garretson*, 407 F.3d at 795–96.

C. <u>GTLA Claim</u>

The City argues that Plaintiffs have not stated a cognizable state law claim for three reasons: (1) the GTLA codifies municipal immunity for civil rights claims; (2) the GTLA includes a discretionary function exception that bars any claim against the City based on failure to train police; and (3) the City, as a municipality, cannot be held vicariously liable for torts committed by its agents. *See* Tenn. Code Ann. § 29–20–205 (ECF No. 13 at PageID 83–85.) Plaintiffs respond that their claims instead fall within the "intentional tort exception" sketched by the Tennessee Supreme Court in *Limbaugh v. Coffee Med. Ctr.*, 59 S.W. 3d 73 (Tenn. 2001) and are therefore not barred by statute.[12] (ECF No. 18 at PageID 128–32.)

The GTLA provides that "'[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result' from the exercise of government duties. 'No party may bring a suit against the State except in such manner and in such courts as the Legislature may by law direct.'" *Johnson*, 617 F.3d at 872 (quoting *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007). "The State" includes municipalities. *Davidson*, 227 S.W.3d at 19. Tennessee courts only find waiver of sovereign immunity where "there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to

---

[12] Plaintiffs' argument finds no safe harbor in *Limbaugh*. "Decisions that rise to the level of planning or policy-making are considered to be discretionary acts requiring judicial restraint and are, therefore, not subject to tort liability." *Limbaugh*, 59 S.W.3d at 85.

permit such litigation," *id*., and the GTLA removes immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn. Code. Ann. §§ 29–20–205 (2010). However, "[i]njuries that 'arise[] out of . . . civil rights' are one such exception, that is, *sovereign immunity continues to apply* in those circumstances' . . . . []GTLA's 'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 . . . ." *Johnson*, 617 F.3d at 872 (quoting Tenn. Code. Ann. §§ 29–20–205 (2010)) (emphasis added).

Here, because Plaintiffs have not distinguished their § 1983 claim from their state law claim, the GTLA affords the City sovereign immunity from Plaintiffs' § 1983 claims.[13] *See, e.g.*, *Johnson*, 617 F.3d at 872 ("Plaintiff's claim regarding . . . negligence arises out of the same circumstances giving rise to her civil rights claim under § 1983. It therefore falls within the exception listed in § 29–20–205, and the City retains its immunity."); *see Savage v. City of Memphis*, 620 F. App'x 425, 429-30 (6th Cir. 2015) ("[The] alleged negligence arises out of the same circumstances giving rise to Plaintiffs' civil-rights claim. The district court thus correctly concluded that the City retains its immunity from Plaintiffs' negligence claims."); *see, e.g., Campbell v. Anderson County*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) ("These torts are alleged to have been committed solely in the context of the violation of [plaintiff's] civil rights— this is in essence a civil rights suit.") The law does not permit Plaintiffs to disguise their § 1983 civil rights claim as one sounding in negligence to circumvent sovereign immunity, particularly when based on the same facts. *See Bryant v. City of Memphis*, 644 F. App'x 381, 384 (6th Cir. 2016); *Gomez*, 2021 WL 1647923, at *54 (". . . because Plaintiffs' negligence claims against the

---

[13] Plaintiffs do assert in their Response that the "circumstances are temporally and factually different", but their failure to develop this argument leaves the Court with nothing but the *ipse dixit* of the Plaintiffs. Their failure to discuss *how* any *specific* circumstances differ between the § 1983 claim and state law claim renders the Court's finding appropriate.

14

County arise out of the same circumstances giving rise to their § 1983 civil-rights claim, the Court finds that those claims are all subject to the []GTLA civil-rights exception.")  Therefore, the City is entitled to immunity.

Plaintiffs cite *Partee v. City of Memphis, Tenn.*, 449 F. App'x 444, 448 (6th Cir. 2011) to allege that the City negligently hired, supervised, and retained the officers involved in the underlying incident.  (ECF No. 18 at PageID 128–29.)  However, *Partee* does not help Plaintiffs' case because the court ultimately "declined to determine whether the additional circumstances required for a successful negligent-hiring claim . . . would remove this claim from the civil rights exception to suit in the GTLA."  *Partee*, 449 F. App'x at 449–50.  Further, the Sixth Circuit in *Partee* found "no need to decide the reach of the GTLA's 'intentional tort exception' . . . ."  *Id*. at 449.  Accordingly, the Court finds, consistent with operative precedent, that the Memphis Police Department's employment decisions fall squarely within the ambit of the discretionary function exception.  *See, e.g.*, *Peatross v. City of Memphis*, 2:14-cv-2343-SHL-cgc, 2015 WL 13021901, at *8 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016) ("The sorts of determinations the MPD must make in how it screens, hires, trains and supervises its employees, and how it goes about investigating and disciplining them for any misdeeds can be better characterized as planning rather than operational functions.  As a result, the City of Memphis is entitled to governmental immunity under the discretionary function exception of the []GTLA as to Plaintiffs' charges of negligent supervision[.]"); *Gomez*, 2021 WL 1647923, *55; *see also Allred v. Rodriguez*, 399 F. Supp. 3d 730, 734–36 (W.D. Tenn. 2019) (collecting cases).  Therefore, the discretionary function exception precludes Plaintiffs' claims against the City under the GTLA.[14]

---

[14] The Court reiterates that any claim to liability against the City based on a *respondeat superior* theory fails as a matter of law.  *Monell*, 436 U.S. at 491; *Wright*, 962 F.3d at 879.

C. First, Fifth, and Eighth Amendment Claims

Defendants argue that Plaintiffs' First, Fifth, and Eighth Amendment claims should be dismissed because Plaintiffs have failed to (1) allege the deprivation of any right guaranteed by any of those amendments and (2) identify and connect a policy to the City that caused any such deprivation. *See Garner*, 8 F.3d at 364 (ECF No. 13 at PageID 82.) Plaintiffs simply argue in their Response that their First Amendment retaliation claim should survive because the case has not yet reached its discovery phase. (ECF No. 18 at 129.) They add that Defendants' citation to *Garner* should be discounted because *Garner* dealt with a Rule 56 motion rather than a Rule 12(b)(6) motion. (*Id.*)

Here, and first, the Court adopts Defendants' unchallenged authority that "[t]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive force claims brought by convicted criminals serving their sentences" and cannot be brought by Plaintiffs. *Aldini v. Johnson*, 609 F.3d 8568, 864 (6th Cir. 2010); *see Graham v. Connor*, 460 U.S. 386 (1989) (ECF No. 13 at PageID 83.) Thus, the Eighth Amendment does not offer Plaintiffs relief.

Second, the Court adopts Defendants' unchallenged authority that the Fifth Amendment remains unincorporated and does not apply in this case because Plaintiffs have not alleged any federal action. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000); *see generally Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Thus, Plaintiffs do not have a Fifth Amendment claim against the City either.

Finally, the Court finds that the standard announced in *Garner* controls. *Garner* involved a Rule 12(b)(6) motion to dismiss that the Sixth Circuit ultimately treated as a summary judgment motion because the district court considered filings outside the pleadings; consequently, and contrary to Plaintiffs' assertion in their Reply, *discovery had not yet occurred* when the district

16

court issued its ruling in *Garner*. *Garner*, 576 F. App'x at 461–62. Moreover, as discussed earlier in this Order, Plaintiffs have failed to show any policy or custom that constituted a "moving force [behind] the constitutional violation" and fail to meet the *Garner* standard. *Harris*, 489 U.S. at 385, 389 (1989); *see Miller*, 408 F.3d at 813. The Sixth Circuit has also clearly stated that "*Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint." *Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011). Therefore, mindful of this guidance, the Court finds Plaintiff has failed to state a claim under the First Amendment.

## CONCLUSION

For the foregoing reasons, Defendant City of Memphis' Motion, (ECF No. 13), is hereby **GRANTED**. The Court **DISMISSES WITH PREJUDICE** all claims brought against the City in the Amended Complaint. (ECF No. 8.)

**IT IS SO ORDERED** this 31st day of March, 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE